## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JUDITH A. MUHLBERG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 06-2578-CM** |
| | ) | |
| **SPRINT CORPORATION, SPRINT** | ) | |
| **NEXTEL CORPORATION, and SPRINT/** | ) | |
| **UNITED MANAGEMENT COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ——————————————————— | ) | |

### MEMORANDUM AND ORDER

Plaintiff Judith Muhlberg brings this action against defendants Sprint Corporation, Sprint

Nextel Corporation, and Sprint/United Management Company (collectively "Sprint"), alleging

breach of an employment contract and a release agreement.  The case is before the court on

plaintiff's Motion for Summary Judgment (Doc. 36) and defendants' Motion for Summary Judgment

(Doc. 38).  Because the court finds disputes over material facts remain, the court denies plaintiff's

motion in its entirety and defendants' motion in part.

**I.     Background**

Defendants recruited plaintiff to work for Sprint.  In a letter dated June 20, 2005 ("offer

letter"), Sprint confirmed its offer to plaintiff for an executive position.  According to plaintiff, the

"pertinent part" of this letter states:

> In addition, we are also offering you the following:
> Employment Agreement: The Employment Agreement provides security for you and
> your family in the form of eighteen months salary continuation in the event of an
> involuntary, not for cause separation from Sprint.  In addition, you will be awarded
> equity as consideration for signing the Employment Agreement.  The total estimated

value of the equity award is $612,500 and includes FON stock options (valued at $306,250) and FON restricted stock units (valued at $306,250).

On July 22, 2005, plaintiff signed the offer letter and executed a document entitled "Employment Agreement," which defined each party's obligations regarding defendants' employment of plaintiff.  The provisions of the agreement relevant to the present issues include (in order of appearance in the agreement):

§ 2.03(c)  The first annual long-term equity incentive award by the Company to Executive shall be made in 2006 at the same time as such grants are made to Similarly Situated Executives, subject to Executive remaining employed by the Company on the grant date, and may consist of one or more grants, having such terms and conditions, including performance conditions, as the Committee may determine.  The target value of this award will be $612,500.

§ 3.  Stock-Based Awards
        As partial consideration for Executive's agreement to the terms hereunder, Executive shall be granted Stock-Based Awards on the terms set forth in this Section 3.

§ 3.01 Award of Restricted Stock Units
        Sprint will take steps necessary to have the Compensation Committee of the Company's Board of Directors grant to Executive, under Sprint's 1997 Long-Term Stock Incentive Program, (the "Omnibus Plan"), an award of 13,000 restricted stock units underlying Sprint's FON Common Stock on the first meeting of that committee after the Effective Date (the "Grant Date").  The terms of this award, to the extent not in conflict with this Agreement, are hereby incorporated into this Agreement by reference.  Notwithstanding the terms of the Omnibus Plan, the definition of Change in Control set forth in this Agreement shall apply for all purposes.
        (a) Restricted Stock Unit Vesting
        Executive may not sell, transfer, assign, pledge, or otherwise encumber or dispose of restricted stock units or use those units in payment of the exercise price of stock options until the shares underlying the units are delivered.  The units covered by this award shall vest, with respect to the total shares granted above, on the third anniversary of the Grant Date, or earlier as provided under Section 3.03(a)

§3.02 Award of Stock Options
        Sprint will take steps necessary to have the Compensation Committee of the Company's Board of Directors grant to Executive, under Sprint's Omnibus Plan an option to purchase 34,000 shares of Sprint's FON Common Stock at a strike price equal to the Fair Market Value of one share of the stock on the Grant Date.  The

option shall become exercisable, with respect to 25% of the total shares granted above, on each of the first four anniversaries of the Grant Date, or earlier as provided under Section 3.03(a).  The options shall expire on the 10th anniversary of the Grant Date.  The terms of the Omnibus Plan, to the extent not in conflict with the terms of this Agreement, are hereby incorporated into this Agreement by reference. Notwithstanding the terms of the Omnibus Plan, the definition of Change in Control set forth in this Agreement shall apply for all purposes.

§3.03 Provisions Applicable to Stock-Based Award

(a)    Acceleration of Stock-Based Awards
          (1) Conditions to Acceleration
                    The restricted stock units granted under this Agreement shall vest, and the stock options granted under this agreement shall become fully exercisable, if, on or after the first anniversary of the Grant Date, Executive is not in breach of this Agreement and (x) there is a Change in Control or (y) one of the three following events occurs:
                              (i) The Company terminates Executive's employment with the Company for any reason other than for Cause;
                                        [other events not at issue]
                    Such Acceleration shall occur on the earlier of (A) a Change in Control or (B) if Executive ceases to be employed by the Company due to the occurrence of an event described above in Sections 3.03(a)(1)(I), (ii), or (iii), the last day of the Severance Period. Notwithstanding the foregoing, in no event shall this Section 3.03(a) apply to any award other than the Stock-Based Award granted under this Agreement.

§5.01  Payments on Certain Terminations
          If, during the Employment Term, (a) the Company terminates Executive's employment with the Company for any reason other than (x) Cause or (y) Executive's Total Disability or (b) Executive terminates Executive's employment with the Company for Good Reason, then Executive shall, subject to the applicable provisions of this Section 5, be entitled to the following payments and benefits (the **"Severance Benefits"**) in lieu of any other payments or benefits available under any and all Company separation plans or policies:
          (i) The Company will pay Executive Executive's Base Salary, in equal installments in arrears and on the same schedule as paid before Executive's Termination Date, for a period (the **"Severance Period"**) commencing on the Termination Date and ending on the earlier to occur of (A) the date 18 months after the Termination Date, or (B) the End Date, at the rate in effect on Executive's Termination Date.
          [other provisions not at issue]
          (v) The end of the Severance Period will be treated as Executive's termination date for purposes of the Company's stock option and restricted stock unit programs.

-3-

§ 16 Entire Agreement
        Except as otherwise noted herein, this Agreement constitutes the entire
agreement between the parties concerning the subject matter specifically addressed
herein and, except for the terms and provisions of any other employee benefit or other
compensation plans (or any agreements or awards thereunder) referred to herein or
contemplated thereby, this Agreement supersedes all prior and contemporaneous oral
agreements, if any, between the parties relating to the subject matter specifically
addressed herein.

On December 14, 2005, six months after the parties entered into the employment agreement,

Sprint terminated plaintiff's employment.  This termination was not for cause.  The parties then

entered into a release agreement.  The terms of this agreement are in a document titled "Release"

that plaintiff signed on March 1, 2006 and a representative for Sprint signed on March 15, 2006.

The parties agree that this release provided that the terms of the employment agreement remained in

effect and that Sprint made no other promises or inducements except as included in the release.

Based on these documents, plaintiff brings this case.  Plaintiff alleges that defendants

breached their obligations to provide payments, stock grants, stock units, and stock options under the

employment agreement.  Plaintiff also alleges that defendants breached their obligation under the

release agreement to provide all benefits under the employment agreement.  Specifically, plaintiff

identifies her damages as $306,250 worth of stock options, $306,250 worth of restricted stock units,

and a "synergy bonus" worth $250,000.[1]

Plaintiff argues that she is entitled to summary judgment because the employment agreement

_____

    [1] Plaintiff's Motion for Summary Judgment and plaintiff's Memorandum in Opposition to
Defendants' Motion for Summary Judgment (Doc. 40) do not address the synergy bonus.
Defendants' moved for summary judgment on this issue.  Additionally, defendants' Memorandum in
Opposition to Plaintiff's Motion for Summary Judgment (Doc. 41) argues that by omitting any
argument about the synergy bonus in her motion for summary judgment, plaintiff waived the claim.
Plaintiff's reply brief (Doc. 42) does not address that argument or the synergy bonus.  Thus, plaintiff
has waived this claim.  *See Jones v. Rent-A-Center, Inc.*, 240 F. Supp. 2d 1167, 1175 (discussing
cases where failure to respond adequately to a motion for summary judgment waives a claim).  The
court grants defendants' motion for summary judgment on this issue.

and the offer letter must be read together to encompass the full scope of the parties' intent and agreement.  According to plaintiff, the offer letter provides critical details of the equity award—the value of the stock options and reserved stock units totaling $612,500.  Plaintiff then uses provisions of the employment agreement to show that she is entitled to that equity award.  Plaintiff contends that the end of her severance period should be treated as her termination date for this equity award.  As a result, the vesting of these awards should be accelerated.  From this, plaintiff concludes that she is entitled to the equity award as described in the offer letter.

In contrast, defendants argue that they are entitled to summary judgment because the only relevant language appears in the employment agreement and the release agreement.  According to defendants, the merger clauses that appear in the employment and release agreements make all other documents related to the terms of the agreements irrelevant.  Defendants then use provisions of the employment agreement to show that they have met all of their contractual obligations.  Defendants list plaintiff's total compensation under the employment agreement, including "[p]ursuant to Section 3.01 of [plaintiff's] Employment Agreement, Sprint's Compensation Committee approved an equity award of 13,000 Restricted Stock units . . . [and p]ursuant to Section 3.02[, ] Sprint's Compensation Committee approved an equity award of 34,000 stock options."  Additionally, defendants argue that plaintiff's restricted stock units cannot vest because Section 3.01(a) restricts vesting to the third anniversary of the grant date, or an accelerated date under Section 3.03(a).  Similarly, defendants read Section 3.02 to only permit 25% of plaintiff's stock options to vest.  Defendants disagree with plaintiff's interpretation of the acceleration provisions, arguing that "the general language [in section 5.01(v)] does not trump the specific requirements in section 3.03(a)."  Defendants also argue that plaintiff's application of section 5.01(v) would render the language in section 3.03(a), "on or after the first anniversary of the Grant Date," meaningless.

## II.     Judgment Standards

This court has jurisdiction over this matter under 28 U.S.C. § 1332, diversity jurisdiction. Although the parties agree that Kansas state law controls the substantive resolution of this case, the court applies federal standards for summary judgment.  *See Duff v. Gen. Motors. Corp.*, 962 F. Supp. 1420, 1423 (D. Kan. 1997) (quoting *C.F. Braun & Co. v. Okla. Gas & Elec. Co.*, 603 F.2d 132, 133 n.1 (10th Cir. 1979) as stating "the propriety of summary judgment in federal diversity cases must be evaluated in light of the Federal Rules of Civil Procedure rather than state procedural law but with reference to the state's substantive law.").

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.     Analysis

Under Kansas law, "when a contract is complete, unambiguous, and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by the writing is inadmissible."  *Hayes v. Kan. Univ. Athletic Corp.*, No. 91140, 2004 WL 1542503, at *2 (Kan. Ct. App. July 9, 2004) (citing *Decatur County Feed Yard, Inc. v. Fahey*, 974 P.2d 569 (Kan. 1999)).  Regarding merger clauses, other courts in this district when sitting under diversity jurisdiction have found clauses similar to section 16 of the employment agreement to be valid and to imply that the contract containing the merger clause represents the "final expression of the parties' agreement."  *See CAT Aircraft Leasing, Inc. v. Cessna Aircraft Co.*,

No. 87-1022-C, 1990 WL 171010, at *5 (D. Kan. Oct. 3, 1990) (applying the clause in the context of warranties).

Although plaintiff acknowledges the presence of merger clauses in the employment agreement and the release agreement, she does not provide any argument for why the court should not enforce them.  Plaintiff insists that the offer letter is a separate contract that must be read in conjunction with the employment agreement.  This contradicts the plain language of the employment agreement, which states that "Except as otherwise noted herein, this Agreement constitutes the entire agreement between the parties concerning the subject matter specifically addressed herein . . . ."  The portions of the offer letter plaintiff highlights are within the subject matter of the employment agreement.  Consequently, the court will limit its review of defendants' contractual obligations to the release agreement and the employment agreement, and disregard plaintiff's reliance on statements in the offer letter.

It is unclear whether this conclusion requires the court to grant defendants' motion for summary judgment.  Plaintiff's only listed damages are "stock options valued at $306,250[;] restricted stock units valued at $306,250."  Presumably, these values were derived from the offer letter, but the court does not presently make that conclusion.  Determining that plaintiff is not entitled to an equity award as described in the offer letter does not imply that plaintiff is not entitled to an equity award under the employment agreement.

The status of plaintiff's equity award under the employment agreement is also unclear. The parties agree that on July 13, 2005, before Sprint terminated plaintiff's employment, Sprint's Compensation Committee approved an equity award of 13,000 restricted stock units and 34,000 stock options.  Defendants include these awards in their listing of the total compensation that plaintiff has received.  However, defendants' motion for summary judgment argues that the plain

language of the employment agreement states that plaintiff's award of restricted stock and 75% of plaintiff's stock option award have been forfeited.  This would prohibit the accelerated vesting of the 13,000 restricted stock units under section 3.01 and plaintiff's option to purchase 25,500 of the 34,000 shares under section 3.02.  The parties do not address the monetary value of these awards.

To determine whether the status of the employment agreement equity awards and their monetary value are questions of material fact, the court must first decide whether plaintiff is entitled to these awards.  The parties agree to three key facts: (1) Plaintiff began her employment in July of 2005; (2) Sprint terminated her employment on December 14, 2005 for a reason other than cause; and (3) Plaintiff's severance period ended on June 14, 2007.  With these facts established, the court analyzes the status of the employment agreement equity awards within the four corners of the employment agreement.

Sections 3.01 and 3.02, which grant the equity awards, provide that the awards will vest or become fully exercisable on specified anniversaries of plaintiff's grant date, "or earlier as provided under Section 3.03(a)."  Section 3.03 states that the dates on which the equity awards will vest or become fully exercisable will be accelerated if certain preconditions are met.  The relevant preconditions here are: (1) "on or after the first anniversary of the Grant Date," plaintiff must not be in breach of the agreement; and (2) "on or after the first anniversary of the Grant Date," Sprint terminates plaintiff's employment for a reason other than cause.  Here, the parties only dispute the second precondition—the date of plaintiff's termination.

Section 5.01(v) states, "The end of the Severance Period will be treated as [plaintiff's] termination date for purposes of the Company's stock option and restricted stock unit programs."  Because plaintiff's severance period ended on June 14, 2007, for purposes of the stock option and restricted stock unit programs, plaintiff's termination date is June 14, 2007.  June 14, 2007 is after

-8-

the first anniversary of plaintiff's grant date in July 2005. Thus, plaintiff has met the preconditions listed in Section 3.03(a)(1). This conclusion is supported by the date provided as the acceleration date in section 3.03, which states, "Such acceleration shall occur . . . if [plaintiff] ceases to be employed by the Company due to the occurrence of an event described above . . . the last day of the Severance Period."

Defendants' argument that this reading of the employment agreement is inaccurate fails for two reasons. First, the court's reading follows the agreement's plain language. Acceptance of a contrary reading would require the court to consider plaintiff's termination date for the stock programs to be June 14, 2007 under section 5.01(v), but December 14, 2005 under section 3.03. Second, defendants argue that the court's reading "would make the 'on or after the first anniversary of the Grant Date'" qualifier unnecessary because acceleration would always occur because of the eighteen-month severance period." The court disagrees. The "on or after the first anniversary of the Grant Date" qualifier also applies to whether plaintiff breached the agreement, whether there is a change in control, whether plaintiff terminates her employment with Sprint for good reason, and whether plaintiff's employment ends because of a sale, merger, or other transaction.

The court finds that plaintiff is entitled to equity awards under the employment agreement. The status of those equity awards and their monetary value are therefore unresolved material facts. While the court acknowledges that certain disputes remain, oral argument would not resolve those issues. The remaining questions must be answered with factual evidence. Because there exist issues of material fact, the court cannot grant summary judgment for either party on this issue.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Summary Judgment, and request for oral argument (Doc. 36) is denied.

**IT IS FURTHER ORDERED** that defendants' Motion for Summary Judgment (Doc. 38) is

denied in part and granted in part.  Defendants' motion is granted only regarding the synergy bonus issue.

Dated this 5th day of March 2008, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**